<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN DEW, | : |
|    Plaintiff, | : Civ. No. 22-1136 (GC) (DEA) |
| v. | : |
| CHARLES ELLIS, et al., | : **OPINION** |
|    Defendants. | : |

<u>**CASTNER, District Judge**</u>

**I.    INTRODUCTION**

Plaintiff, John Dew ("Plaintiff" or "Dew"), is a former pretrial detainee (now state prisoner) who was previously detained at the Mercer County Correctional Center ("MCCC") in Trenton, New Jersey. He is proceeding *pro se* with a Second Amended Civil Complaint ("SAC"). (*See* ECF 6). Previously, this Court granted Plaintiff's application to proceed *in forma pauperis*. (*See* ECF 12).

The allegations of the SAC must be screened pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether they are frivolous or malicious, fail to state a claim upon which relief may be granted, or whether the allegations seek monetary relief from a defendant who is immune from suit. For the following reasons, Plaintiff's SAC shall proceed in part.

**II.    BACKGROUND**

The allegations of the SAC are construed as true for purposes of this screening Opinion. Plaintiff names the following as Defendants in the SAC:

1. County of Mercer (hereinafter the "County")

   2. Charles Ellis – Warden of MCCC

   3. D.A. Paris – Deputy Warden of MCCC

   4. Jane/John Doe Correctional Officers 1-100

   5. C.F.G. Health Systems LLC – medical contractor for MCCC

   6. Les Paschall – CEO of C.F.G. Health Systems LLC

   7. James Neal – Medical Director of MCCC

   8. Nancy Gordon – Nurse Practitioner at MCCC

   9. Jane/Joe Doe – Health Services Administrator at MCCC

   10. Jane/John Does 1-25 – Nurses at MCCC

(ECF 6 at ¶ 13). Plaintiff sues all Defendants in their individual and official capacities, except for the County which is sued only in its official capacity. (*See id.* ¶ 14). Plaintiff alleges that beginning in February, 2022, he has filed grievances on the following issues while housed at MCCC:

   1. Being housed in deplorable living conditions without being provided cleaning supplies;

   2. Being housed around inmates and pre-trial detainees and state parole violators who are suffering from health care issues including flulike symptoms and skin rashes; and

   3. Filling out sick call slips without getting them answered or reviewed by the medical department.

(*See id.* ¶ 15). Plaintiff asserts that Defendants the County, Ellis, Paris and the Jane/John Doe Correctional Officers are aware of these grievances but have done nothing about them. (*See id.* ¶ 16). Furthermore, he states that these Defendants refused to provide masks daily. (*See id.*).

Plaintiff also complains about the conditions of his confinement while detained at MCCC. More specifically, he states that there is mold in the showers and unit areas and that inmates were forced to shower from the sink for months because the showers were inoperable. (*See id.* ¶ 17).

Mold and asbestos also apparently cover all of the air ducts which prevents fresh air from entering the units. (*See id.* ¶ 22). He further claims MCCC only permits sporadic recreation. (*See id.*). Defendants Ellis, Paris and the John/Jane Doe Correctional Officers also only sporadically provide clean linen and never provide cleaning services for an inmate's clothing which then cause inmates to suffer skin rashes. (*See id.*).

Plaintiff next complains that there are not enough officers that control the dormitories which thereby places inmates lives at risk. (*See id.* ¶ 18). Plaintiff further claims that Defendants the County, Ellis, Paris and the John/Jane Doe Correctional Officers are aware of inmates who have a propensity for violence being placed around inmates who do not have a propensity for violence. (*See id.* ¶ 19). This creates circumstances where inmates get assaulted and abused by other inmates. (*See id.*).

Plaintiff next states that the County, Ellis and Paris have an unwritten pattern/practice/policy/custom of not investigating complaints made by inmates at MCCC and not taking corrective measures. (*See id.* ¶ 20). Plaintiff further states that Defendants Neal, Gordon, Jane/John Doe Health Services Administrator and Jane/John Doe 1-25 Nurses have an unwritten pattern/practice/policy/custom of not investigating complaints and not taking corrective measures related to medical treatment that is particularly needed for a particular inmate. (*See id.* ¶ 21).

Plaintiff brings eight counts in his SAC. The first and second counts are brought under the Eighth and Fourteenth Amendments to the United States Constitution. The remaining counts are brought under the New Jersey Constitution and New Jersey statutory and state law.

Plaintiff seeks monetary damages and declaratory and injunctive relief. (*See id.* ¶¶ 34-36).

### III.  LEGAL STANDARD

Under the Prison Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs a court to *sua sponte* dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings are liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

In this case, Plaintiff seeks relief in part under 42 U.S.C. § 1983. A plaintiff may have a cause of action under § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV.   DISCUSSION

Plaintiff's allegations can be separated into several legal categories; they are as follows:

1. Deliberate indifference to Plaintiff's serious medical needs;
2. MCCC's conditions of confinement;
3. Failure to protect; and
4. State law claims.

Prior to analyzing these claims, however, this Court notes at the outset that Plaintiff is no longer housed at MCCC, but rather is now a state prisoner at Northern State Prison in Newark, New Jersey. (*See* ECF 13). Therefore, his claim for prospective injunctive relief is now moot and

is dismissed *See Williams v. Ann Klein Forensic Ctr.*, No. 18-9606, 2020 WL 614657, at *6 (D.N.J. Feb. 10, 2020) (internal quotation marks and citations omitted) ("A prisoner's transfer from the prison complained of generally moots his claims for prospective injunctive relif.").

A. <u>Deliberate Indifference to Plaintiff's Serious Medical Needs</u>

Plaintiff alludes to filling out sick call slips and not having them answered or reviewed by the medical department. He also alludes to not being provided masks daily, presumably to protect him from contracting COVID-19. "In order for liability to attach under [§ 1983] a plaintiff must show that a defendant was personally involved in the deprivation of his federal rights." *Fears v. Beard*, 532 F. App'x 78, 81 (3d Cir. 2013) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "[L]iability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted).

Plaintiff's claims for deliberate indifference to his serious medical needs are analyzed under the Fourteenth Amendment as Plaintiff was a pretrial detainee related to the claims he is bringing when detained at MCCC. *See Tapp v. Brazill*, 645 F. App'x 141, 145 n.4 (3d Cir. 2016). To allege a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions amounted to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Punishment has both a subjective and an objective component – the objective component asks whether the deprivation was sufficiently serious and the subjective component asks whether the defendant acted with a sufficiently culpable state of mind. *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). While the Fourteenth Amendment controls this claim, the Eighth Amendment's "deliberate indifference" standard provides a guide to what, at a minimum, is owed to pretrial detainees. *See*

*Tapp*, 645 F. App'x at 145 n.4 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003)); *see also Reavis v. Hicks*, No. 19-21711, 2020 WL 3034619, at *3 (D.N.J. June 5, 2020) (citation omitted).

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

Plaintiff fails to state a deliberate indifference claim. Indeed, besides the mask issue discussed *infra*, he fails to state with any specificity any ailment that he himself had for which any Defendant acted deliberately indifferent to.

Nevertheless, this Court construes Plaintiff's allegation related to a lack of new daily masks as related to Defendants being deliberately indifferent to Plaintiff potentially contracting COVID-19. However, Plaintiff does not allege that he has ever in fact contracted COVID-19.

In *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020), immigration detainees alleged that due to their ages and medical conditions, their confinement at county jails during the COVID-19 pandemic amounted to punishment and/or deliberate indifference to their serious medical needs. Although the Third Circuit in *Hope* agreed that the detainees' particular vulnerabilities could be assessed in determining whether their conditions of confinement amounted to punishment, the court rejected the detainee's arguments that exposure to COVID-19 was per se unconstitutional and that the government must eliminate the detainees' risk of exposure in order to comply with constitutional mandates. *See* 972 F.3d at 329.

Plaintiff does not state that he had a particular vulnerability to COVID-19 such that his complaints about a purported lack of a daily new mask protocol at MCCC amounts to punishment under the Fourteenth Amendment. Furthermore, Plaintiff fails to state that the Defendants knew that he had a particular vulnerability to COVID and ignored that risk of serious harm. Thus, Plaintiff fails to state a direct deliberate indifference to his serious medical needs claim as well. *Accord Abner v. Ellis*, No. 21-15359, 2022 WL 17177838, at *6 (D.N.J. Nov. 23, 2022).

Plaintiff though may also be attempting to bring a claim against some Defendants in their role as supervisors. Supervisory liability in a § 1983 action must be predicated upon personal involvement, not *respondeat superior*. *See Brown v. Deparlos*, 492 F. App'x 211, 214–15 (3d

Cir. 2012) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)). There are two theories of supervisory liability applicable to § 1983 claims; they are: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Del. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). With respect to the second theory of liability, the plaintiff must show that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *See Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Given that Plaintiff has failed to plead an underlying deliberate indifference to his serious medical needs claim, any argument for supervisory liability against the Defendants also must fail. *See Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019) ("Talley's claims of supervisory liability and conspiracy fail because, as noted by the District Court, there is no underlying constitutional violation.") (citations omitted). Thus, Plaintiff's deliberate indifference to his serious medical needs claim is dismissed without prejudice for failure to state a claim upon which relief may be granted.

B. Conditions of Confinement

The Court next construes Plaintiff's SAC as asserting a claim related to his conditions of confinement while at MCCC. Most notably, Plaintiff complains about unworkable showers and mold. He also alludes to only being permitted sporadic recreation. The Court construes Plaintiff's Complaint as raising this claim against Defendants Ellis, Paris, the Correctional Officers Jane/John Doe 1-10 and the County.[1]

As a pretrial detainee, Plaintiff's conditions of confinement claims are analyzed under the Fourteenth Amendment as opposed to the Eighth Amendment. *See Hubbard v. Taylor,* 538 F.3d 229, 231 (3d Cir. 2008) (explaining that the Fourteenth Amendment applies to a pretrial detainees' conditions of confinement claim). "The Constitution mandates that prison officials satisfy inmates' 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.'" *Duran v. Merline,* 923 F. Supp. 2d 702, 719 (D.N.J. 2013) (quoting *Helling v. McKinney,* 509 U.S. 25, 32 (1993)) (remaining citation omitted). To assert a claim, a plaintiff must allege that the defendant knew of and disregarded an excessive risk to plaintiff's health. *See Wilson v. Burks,* 423 F. App'x 169, 173 (3d Cir. 2011) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

In similar actions to the one Plaintiff is bringing by other pretrial detainees housed at MCCC, courts in this District have permitted those plaintiffs' conditions of confinement claims related in part to the mold/shower issues to proceed past screening. *See Willis v. Cty. of Mercer,* No. 21-19403, 2023 WL 3453663, at *5-6 (D.N.J. May 15, 2023); *Abner,* 2022 WL 17177838, at *4-5. Indeed, in *Abner,* the Court noted that at the early screening stage, it is plausible that Defendants like Ellis and Paris, who allegedly work at the facility, have knowledge of the mold issues at MCCC. *Abner's* reasoning is persuasive such that this Court will permit Plaintiff's

---

[1] Plaintiff's claims against the County are discussed in a separate section *infra.*

conditions of confinement claim to proceed past screening as to Defendants Ellis, Paris and the John/Jane Doe Correctional Officers 1-100.[2]

As noted *supra*, Plaintiff also alludes to a lack or sporadic recreation. However, such a sparse allegation fails to state a claim upon which relief may be granted. While courts have noted that a denial of recreation *can* result in a constitutional violation, *see Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (lack of exercise can rise to constitutional level where the health of the individual is threatened), a plaintiff fails to state a claim where a plaintiff did not "assert[ ] that the totality of prison conditions so deprived him/her of exercise that the plaintiff suffered a tangible physical harm, and that such prison conditions resulted from the officials' aim to punish the plaintiff rather than from legitimate governmental goals, e.g., inmates/personnel's safety and/or maintenance of the institution." *See Hakim v. Levinson,* No. 09-5533, 2010 WL 1705773, at *4 (D.N.J. Apr. 26, 2010). Plaintiff's minimal reference to a lack of or sporadic recreation does not rise to a constitutional level. Thus, Plaintiff shall not be permitted to proceed on this portion of his condition of confinement claim.

C. <u>Failure to Protect</u>

Next, Plaintiff raises a failure to protect claim related to inmate-on-inmate violence at MCCC. To state a claim against a prison official for failure to protect, "the inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi,* 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Hamilton v. Leavy,* 117 F.3d 742,

---

[2] As Plaintiff cannot serve Jane or John Does, he will have to name specific officers who purportedly had knowledge of these conditions in any third amended complaint he may elect to file so that service can be effectuated.

746 (3d Cir. 1997)). "Deliberate indifference" is a subjective standard whereby "'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Id.* (citing *Beers-Capitol v. Whetzel,* 256 F.3d 120, 125 (3d Cir. 2001)). As noted by the Third Circuit:

> [i]t is not sufficient that the official should have known of the risk. [*Beers Capitol,* 256 F.3d at] 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." *Farmer,* 511 U.S. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

*Bistrian,* 696 F.3d at 367; *see also Paulino v. Burlington Cty. Jail,* 438 F. App'x 106, 109 (3d Cir. 2011) (noting that state of mind requirement for prisoner claims of deliberate indifference applies to pretrial detainee claims) (citation omitted); *see also Miller v. Ricci,* No. 11-859, 2011 WL 1655764 (D.N.J. Apr. 28, 2011) ("To plead a[ ] . . . failure to protect claim a plaintiff must plead facts raising a plausible inference of . . . the defendants' deliberate indifference to that particular risk of harm").

While Plaintiff alludes to inmate-on-inmate assault, he fails to plead any cause of harm to himself. As such, Plaintiff fails to state a failure to protect claim. *See, e.g., Myer v. Giroux,* No. 15-71, 2018 WL 6831147, at *8 (W.D. Pa. Dec. 28, 2018) (Plaintiff failed to establish failure to protect claim where record was too speculative and lacked any evidence of physical harm or assault). Thus, this claim will also be dismissed without prejudice for failure to state a claim.

D. Defendant County of Mercer – *Monell*

As noted *supra*, Plaintiff has also named the County of Mercer as a Defendant. To hold a municipality liable under § 1983, a plaintiff must demonstrate that his rights were violated by a policy or custom of the municipality and that such policy or custom has been "the moving force"

behind the deprivation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Municipal policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Id.* at 690. A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691.

> An individual's conduct implements official policy or practice under several types of circumstances, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-84, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)) (other citations omitted).

The only underlying constitutional violation that Plaintiff has sufficiently alleged relates to the mold/inoperable showers at MCCC as described *supra*. However, Plaintiff fails to allege with any facial plausibility that these conditions of confinement at MCCC resulted from a policy or custom of the County of Mercer. Thus, Plaintiff's federal constitutional claims against the County of Mercer shall be dismissed without prejudice for failure to state a claim.

E. <u>State Law Claims</u>

In Counts Three and Four, Plaintiff asserts that the Defendants have violated his rights under the New Jersey Constitution. In Count Three, Plaintiff asserts Defendants violated his right

to be free from cruel and unusual punishment. (*See* ECF 6 ¶ 27). In Count Four, Plaintiff alleges that Defendant's violated his right to a grievance. (*See id.* ¶ 28).

The New Jersey Civil Rights Act ("NJCRA") "was modeled after [ ] § 1983[ ] and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution[ ]." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). When interpreting the NJCRA, "[c]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009). Given the similarity of analysis with respect to Plaintiff's claims under the NJCRA with Plaintiff's claims under the Fourteenth Amendment, Count Three may proceed past screening against Defendants Ellis, Paris and the Jane/John Doe Correctional Officers 1-100.

Nevertheless, Plaintiff fails to state a claim with respect to his right to a grievance. This claim against the Defendants is based on Plaintiff's allegations that they have ignored his grievances. While the filing of a grievance is a constitutionally protected activity, *see Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (noting that the filing of a grievance is protected by the First Amendment), access to an adequate grievance procedure is not a constitutional right. *See, e.g., Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)) ("Prisoners do not have a constitutional right to prison grievance procedures."). "[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process [citation omitted], a prisoner cannot maintain a constitutional claim . . . based upon [the prisoner's] perception that [the recipient of the grievances] ignored and/or failed to properly investigate his grievances." *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011). Because Plaintiff has no constitutional right to a prison grievance procedure, his

allegations regarding alleged mismanagement of the grievance system at MCCC and the failure to answer his individual grievances fail to state a legally cognizable claim.

In Count Five, Plaintiff raises a claim under state law against the Defendants for intentional infliction of emotional distress. (*See* ECF 6 ¶ 29). To make out a common law claim for intentional infliction of emotional distress, a plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. *See Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1115 (N.J. 2009). A fourth required element requires "the distress must be so severe that no reasonable person could be expected to endure it. Severe emotional distress refers to any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *See Aly v. Garcia*, 754 A.2d 1232, 1236 (N.J. Super. App. Div. 2000) (citing *Taylor v. Metzger,* 152 N.J. 490, 515 (1998)). Indeed, "[i]t is not enough to establish that a party is acutely upset by reason of the incident. In order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae." *Id.* at 1236-37. Here, Plaintiff has not properly pleaded the elements of an intentional infliction of emotional distress claim. Thus, this claim is dismissed without prejudice for failure to state a claim upon which relief may be granted. *Accord Abner*, 2022 WL 17177838 at *8 (finding in similarly worded complaint that Plaintiff failed to properly plead the elements of an intentional infliction of emotional distress claim).

In Count Six, Plaintiff cites to N.J. Stat. Ann. § 2C:12-2 to argue that the Defendants are liable for reckless endangerment. Plaintiff cites to and relies on the New Jersey Criminal Code to bring this claim. However, Plaintiff cannot bring a private right of action against the Defendants under New Jersey's Criminal Code. *See, e.g., Brown v. Progressive Specialty Ins. Co.*, 763 F. App'x. 146, 147 (3d Cir. 2019) (state law criminal statutes neither authorize civil actions nor create

civil liabilities); *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001) ("New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such an action.).  Thus, this claim is also dismissed without prejudice for failure to state a claim upon which relief may be granted.

Finally, in Counts Seven and Eight, Plaintiff seeks relief under state law for negligence. Under New Jersey law, "[t]o sustain a cause of action for negligence, a plaintiff must establish four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (internal quotations and citations omitted). "It is the obligation of the plaintiff to prove each element." *Coleman v. Martinez*, 254 A.3d 632, 642 (N.J. 2021).  This Court construes one potential area where Plaintiff *may* have alleged enough to warrant his negligence claims proceeding beyond the Court's initial screening. Plaintiff's state law negligence claims against Ellis, Paris and the Jane/John Doe Correctional Defendants for negligent conditions of confinement claim while housed at MCCC shall proceed.

### V.   CONCLUSION

For the foregoing reasons, Plaintiff's SAC shall proceed in part.  Plaintiff's conditions of confinement claims against Defendants Ellis, Paris and the Jane/John Doe Correctional Officers 1-100 under the federal constitution and NJCRA shall proceed.  Additionally, Plaintiff's state law negligence claims against those same Defendants shall proceed related to Plaintiff's conditions of confinement claims.  An appropriate Order will be entered.

DATED: May 31, 2023

GEORGETTE CASTNER
United States District Judge